# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARAM J. ABOOD, ) | |
| RICHARD J. RUSSELL, JAMES PAPPAS, ) | |
| KEVIN J. ROZICH and ) | |
| JENNIFER RINGDAL, t/d/b/a ) | |
| LAW OFFICES OF ABOOD, RUSSELL, ) | |
| PAPPAS & ROZICH, a Partnership, ) | CIVIL ACTION NO. 3:2007-299 |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| GULF GROUP LLOYDS, through its ) | |
| subsidiaries, GULF INSURANCE ) | JUDGE GIBSON |
| COMPANY, ATLANTIC INSURANCE ) | |
| COMPANY, TARGET INSURANCE ) | |
| SERVICES, and ST. PAUL TRAVELERS ) | |
| ) | |
| Defendants, ) | |

## MEMORANDUM and ORDER OF THE COURT

**GIBSON, J.**

Before the Court comes plaintiffs' Motion to Remand (Document No. 4) for failure to meet the requisite jurisdictional value pursuant to 28 U.S.C. § 1332. Also before the Court comes defendants' Motion to Dismiss (Document No. 2) for a failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the motion to remand will be denied and the motion to dismiss will be granted.

## JURISDICTION AND VENUE

This court has original jurisdiction in this matter pursuant to 28 U.S.C. § 1332. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).

## FACTUAL BACKGROUND

On or about February 19, 2001, Loretta Sefcik (hereinafter Sefcik") was injured in a "single motor vehicle accident" while a passenger in a car driven by Pamela Herdman. Motion to Dismiss-Exhibit B(Document 2-4) p. 2. In order to recover for her personal injuries sustained in the accident, Sefcik acquired the legal services of plaintiff James Pappas (hereinafter "Pappas") of the law firm Abood, Russell, Pappas and Rozich (hereinafter "ARPR"). Motion to Dismiss-Exhibit A1 (Document 2-2) p. 5. The statute of limitations on Sefcik's personal injury claim expired on February 19, 2003; however, because of the difficulties in demonstrating the extent of Sefcik's injuries, neither Pappas nor any of the other members of ARPR filed her complaint before the expiration of the statute of limitations. *Id.* at pp. 5-6. On or about February 26, 2003, the plaintiffs informed Sefcik of their failure to timely file her cause of action and in response she indicated that she would not seek a malpractice claim against Pappas and ARPR because she could still pursue her underinsured motorist benefits. *Id.* at p. 6.

In 2004, the plaintiffs purchased a "claims-made" professional liability insurance from Atlantic Insurance Company, a subsidiary of defendant Gulf Group Lloyds which insured the plaintiffs from June 17, 2004 to June 17, 2005. Motion to Dismiss-Exhibit A1, pp. 5, 13. It also included a provision that denied coverage for any claim related to a "negligent act...occurring prior to the inception date of [the] policy if [the] insured...knew or could have reasonably foreseen [would] be the basis of a 'claim'...." Motion to Dismiss-Exhibit A2 (Document 2-3) p. 14.

On June 8, 2005, Sefcik's new counsel informed the plaintiffs that a professional liability claim would be filed based on their failure to preserve Sefcik's personal injury claim. Exhibit A1, p. 6. In

2

a letter dated June 10, 2005, plaintiffs communicated Sefcik's intentions to the defendants. *Id.* On June 15, 2005, the defendants advised the plaintiffs of their receipt of this letter and informed them that the matter was under consideration. *Id.* at pp. 6-7. On June 28, 2005, the defendants informed the plaintiffs that insurance coverage for this claim may be denied because the plaintiffs neglected to inform the defendants of this potential claim before signing the policy despite it being a reasonably foreseeable claim. *Id.* at p. 7. On July 22, 2005, Sefcik filed suit against the plaintiffs, seeking damages in excess of $35,000. Notice of Removal, Exhibit C (Document No. 1-5), p. 8. On August 1, 2005, after being informed that Sefcik had officially filed suit, the defendants informed the plaintiffs that coverage would in fact be denied. Exhibit A1, p. 7.

## PROCEDURAL BACKGROUND

On October 18, 2007, plaintiffs commenced a declaratory judgment action under Pennsylvania law[1] against the defendants in the Court of Common Pleas of Cambria County, Pennsylvania seeking a declaration that the defendants are required to provide both a defense and indemnification in Sefcik's malpractice claim. Brief in Support of Motion to Dismiss (Document No. 3), pp. 1-4. On November 16, 2007, the defendants removed the case from the Court of Common Pleas of Cambria County to this Court pursuant to 28 U.S.C. §§ 1332, 1441, 1446. Notice of Removal (Document No. 1-1). On November 26, 2007, the defendants filed a Motion to Dismiss or alternatively, a Motion for a More Definite Statement, or alternatively a Motion for Summary Judgement. *See* Document No. 2. On November 30, 2007, the plaintiffs filed a Motion to Remand. *See* Document No. 4. As the Motion to

---

[1] 42 Pa.C.S.A. §§ 7531-7541.

Remand addresses this court's subject matter jurisdiction over this civil action, it will be analyzed first.

## ANALYSIS

### I. MOTION TO REMAND

28 U.S.C § 1332 states that district courts shall have original jurisdiction over civil actions between citizens of different states which have an amount in controversy that exceeds $75,000, excluding interest and costs.

#### A. AMOUNT IN CONTROVERSY

In federal courts, the longstanding method for determining the amount in controversy is to look at the complaint, as long as that complaint was submitted "in good faith." *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S. Ct. 1570, 1573, 6 L. Ed. 2d 890, 894 (1961). The burden of proof is on the party who is opposing federal court jurisdiction for a lack of the requisite amount in controversy. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 58 S. Ct. 586, 82 L. Ed. 845 (1938). In *Red Cab*, the Court determined that in order for a party to successfully dismiss an action based upon a lack of the requisite jurisdictional amount, "[i]t must appear to a *legal certainty* that the claim is really for less than the jurisdictional amount," or that the plaintiff was never entitled to recover the requisite amount. *Id.* at 289, 590, 848 (emphasis added). The United States Court of Appeals for the Third Circuit has accepted this legal certainty standard as long as "the relevant facts are not in dispute or findings have been made." *Samuel-Bassett v. Kia Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004). In the event that no findings of fact have been made or plead, the *Samuel-Bassett* court would require the party in favor of federal court jurisdiction to support this claim of jurisdiction against a preponderance of the evidence standard. *Id.*

4

In cases, such as the instant case, where the amount in controversy is not directly mentioned in the complaint, it is necessary to determine the possible amount from a "reasonable reading of the rights being litigated" and not by the "low end of an open-ended claim." *Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)(citations omitted). In legal malpractice claims, for example, recovery is limited to the amount that the plaintiff could have won in the initial lawsuit and recovered from a defendant but-for the negligence of the attorney. *Kituskie v. Corbman*, 714 A.2d 1027, 1030 (Pa. 1998). Such a limit is put in place because it would be unjust for a plaintiff to recover more money in her malpractice action than she would have recovered in the original action. *Id.* Similarly, in declaratory judgment actions based upon insurance policies, the jurisdictional amount is the maximum available under the policy. *T.H.E. Insurance Co. v. DeMutis*, 1999 U.S. Dist. LEXIS 1561, 6-7 (E.D. Pa. 1999). Despite the "costs" exception in 28 U.S.C. § 1332, the amount available under such policies could include attorneys fees if those fees "are necessarily part of the amount in controversy." *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997).

The instant case is the direct result of Sefcik's civil action against the plaintiffs, and both parties accept the existence and demands of that action. *See* Sefcik Complaint, Motion to Remand, Exhibit 1 (Document No. 4-2). Since the pertinent facts relating to the jurisdictional value were pled, the *Red Cab* "legal certainty" standard applies to the case. *Red Cab*, 303 U.S. at 289, 58 S. Ct. at 590, 82 L. Ed. at 848. As a result, the plaintiffs' well-pled complaint must be examined to decide if there is a "legal certainty" that the jurisdictional value will not be met. *Horton*, 367 U.S. at 353, 81 S. Ct. at 1573, 6 L. Ed. 2d at 894. Count two of the complaint seeks special performance in the form of an immediate indemnification of Ms. Sefcik's claims, or a legal defense, which will potentially also be followed by

5

indemnification. Motion to Dismiss-Exhibit A1, p. 10. As a result, there are three possible sources of damages that can together make up the amount in controversy: the damages awarded to Ms. Sefcik, the costs of litigation (including attorneys fees), and the additional compensation levied by the Professional Liability Coverage Form. Motion to Dismiss-Exhibit A1, p. 27.

### 1. DAMAGES AVAILABLE TO SEFCIK

In Sefcik's complaint against the plaintiffs, she demanded a judgment in excess of $35,000. Sefcik Complaint, Motion to Remand, Exhibit 1, pp. 6, 7, 8. Since the amount of damages that she could receive needs to be calculated from a "reasonable reading of the rights involved" and not just this "low-end", minimum number, her possible indemnification, for purposes of calculating the amount in controversy, must be higher than $35,000. *Angus,* 989 F.2d at 146. Sefcik was the passenger of Herdman, who was insured by State Farm Insurance Company under a liability policy with a limit of $50,000. Motion to Remand, p. 2. "Sefcik was insured by Penn National Insurance and has an underinsured motorist [(hereinafter "UIM")] claim against [that company, with a] statute of limitations [that] has not yet begun to run." *Id.* As a result of these two policies, the plaintiffs argue that Sefcik could recover no more than $50,000 in the legal malpractice suit. However, contrary to the argument of the plaintiffs, neither of the two policies, to a legal certainty, limits Sefcik to a $50,000 claim in the malpractice suit.

First, it is reasonable to assume that a jury in Sefcik's case could have awarded damages in excess of $50,000. Had this been the case, she would have been able to recover the additional money from her insurance company if Herdman was unable to pay these additional damages. This potential additional money in UIM benefits is most likely not recoverable in her suit against the plaintiffs because

6

the statute of limitations has yet to expire on such a claim, meaning that the plaintiff's alleged negligence has not resulted in the inability to recover the UIM benefits. Motion to Remand, p. 2. However, there is no guarantee that Herdman would have been judgment proof in the event that the damages were greater than $50,000. If this was the case, Sefcik would be entitled to recover this additional money in the malpractice suit since she would have recovered that money initially if not for the plaintiffs' negligence. *Kituskie*, 714 A.2d at 1031.

Second, because of the plaintiffs' negligence in failing to toll the statute of limitations, it is possible that Sefcik's insurance provider will deny her any future UIM benefits. In *Zourelias v. Erie Ins. Group*, 691 A.2d 693 (Pa. Super. 1997) the court upheld the insurance company's refusal to pay UIM benefits because the insured violated the subrogration clause in his policy when his attorney failed to toll the statute of limitations on the claim. If Sefcik's counsel chooses to pursue her UIM benefits, and they are denied by Penn National, this would be another damages claim against the plaintiffs possibly in excess of $50,000.

In either the first or the second case, any additional damages claimed against the plaintiffs would push the amount in controversy close to or over the required $75,000 amount.

## 2. COSTS OF LITIGATION

Despite the "costs" exception in 28 U.S.C. § 1332, attorney's fees may be included in the calculation of the amount in controversy if those fees are a "necessary part of the amount in controversy." *Suber,* 104 F.3d at 585. The complaint asks for immediate indemnification of Sefcik, or for a legal defense; both of which are also options for the plaintiffs under their policy with the defendants themselves. Motion to Dismiss, Exhibit A-1, p. 10. Essentially, if the issues surrounding

7

the malpractice claim demand any legal action rather than or in addition to an indemnification settlement, the defendants would be required to bear the cost of these legal actions in the event that the instant case is successful. Since the declaratory judgment action could declare the rights of the plaintiffs with respect to their right to demand payment for the cost of litigation, the Court finds that these costs are a "necessary part of the amount in controversy." *Suber, supra.*

The costs of litigation in a legal malpractice case involving some sort of injury from an accident can be quite extensive. These costs could result from numerous sources such as the taking of depositions of parties and witnesses, compensation to experts for a review of prior medical records and for examinations of the current physical state of the injured party, attorney's fees, and other typical trial-related costs. Although no cost is certain for these legal proceedings, the defendants have indicated in a sworn affidavit that such costs could easily reach a minimum of $25,000. Response in Opposition, Exhibit A (Document 5-2), p. 2. Given Sefcik's apparent willingness to settle her malpractice claim with the plaintiffs for $50,000, *see* Motion to Remand, Exhibit 2 (Document 4-3), $25,000 in litigation costs might seem to be an over-estimate; moreover, the duty to defend under the claim would not be necessary and the plaintiffs and defendants would only be concerned with a duty to indemnify which would include, *inter alia*, the amount of settlement plus any possible claim for the plaintiffs' fees incurred in negotiating settlement. However, if litigation between Sefcik and the plaintiffs is necessary, the litigation costs may in fact exceed $25,000, but even if they do not, these costs can potentially add a significant amount of money toward the amount in controversy.

### 3. PROFESSIONAL LIABILITY COVERAGE FORM

The Professional Liability Coverage Form in the plaintiffs' malpractice insurance policy states:

8

> In addition to the Limits of Liability, we will pay reasonable expenses incurred by the insured at our request to assist us in the investigation of the "claim" or defense of the "suit", including actual loss of earnings up to $250 a day for each insured because of time off from work, subject to a limit of $5,000 for each individual insured, subject to a maximum limit of $10,000 per "policy period".

Motion to Dismiss-Exhibit A1, p. 27.

The coverage provided by this portion of the insurance policy further adds to the potential costs of litigation for the defendants. Although it is not certain that the costs of this portion of the coverage will reach the maximum allowed amount of $10,000, for jurisdictional purposes, the amount calculated is the maximum amount available under the policy. *DeMutis*, 1999 U.S. Dist. LEXIS 1561 at pp. *6-7. Accordingly, this portion of the policy adds an additional $10,000 to the amount in controversy because it is far from a legal certainty that this compensatory threshold will not be utilized and reached. *Red Cab*, 303 U.S. at 289, 58 S. Ct. at 590, 82 L. Ed. at 848.

### 4. CALCULATION

Considering the three potential sources of money that could contribute to the amount in controversy, it cannot be shown to a legal certainty that the jurisdictional amount will not exceed $75,000. *Red Cab*, 303 U.S. at 289, 58 S. Ct. at 590, 82 L. Ed. at 848. First, the money recoverable by Sefcik in her suit against the plaintiffs may alone exceed the jurisdictional value if she can prove the viability of her claim against Herdman. Although the damages awarded may be $50,000 or less, it is not a legal certainty that this limit will be a reality. Second, the traditional costs of litigation in defending a legal malpractice action could very well exceed $25,000. If that was the case, even if Sefcik's recovery was limited to $50,000 (which it is not), the jurisdictional value could still be met. Furthermore, if the costs of litigation did not exceed $25,000, these costs would still add to the amount

9

in controversy, bringing it closer to the $75,000 minimum. Finally, the $10,000 maximum compensation outlined in the Professional Liability Coverage Form must be fully added to the amount in controversy. When combined with the two previous sources of money, there is little question that the jurisdictional amount is met. However, if there is any doubt that the requisite value is met, this doubt is not sufficient enough to show to a legal certainty that the sought after value is below $75,000. The motion to remand is denied.

## II. FAILURE TO JOIN AN INDISPENSABLE PARTY

The Supreme Court has held that a court of appeals should, *sua sponte*, act to protect the interests of a party who was not properly joined in a lawsuit. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111, 88 S. Ct. 733, 738, 19 L. Ed. 2d 936, 945 (1968). Since that time, the circuit courts have extended this right to both the trial courts and appellate courts. *Mastercard Int'l, Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 382-383 (2d Cir. 2006); *see also Delgado v. Plaza Las Ams. Inc.*, 139 F.3d 1, 2 (1st Cir. 1998); *Pickle v. Int'l Oilfield Divers, Inc.*, 791 F.2d 1237, 1242 (5th Cir. 1986). As a result, this court has previously followed the practice of raising mandatory joinder issues *sua sponte*. *See Hayden v. Freightcar Am., Inc.*, 2008 U.S. Dist. LEXIS 9913, 53 (W.D. Pa. Feb. 11, 2008). Accordingly, although the issue of the failure to join Sefcik as an indispensable party was not raised by the parties in the instant case, the issue will now be addressed by this court on its own.[2]

The Pennsylvania Declaratory Judgment Act states:

GENERAL RULE.-- When declaratory relief is sought, all persons shall be made parties who

---

[2]The plaintiffs did raise this issue in their brief in support of the Motion to Remand. However, this brief was incorrectly filed and thus stricken from the record.

10

have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding.

42 Pa.C.S.A. § 7540.

In *Vale Chem. Co. v. Hartford Accident and Indem. Co.*, 512 Pa. 290, 293-294, 516 A.2d 684, 686 (1986) the Pennsylvania Supreme Court interpreted the Declaratory Judgment Act to hold that when a party asserts a claim against an insured, that party is an indispensable party in any declaratory judgment action between the insurer and the insured. If an indispensable party has not been joined to the suit, the Court noted that the case must be dismissed due to a lack of subject matter jurisdiction. *Id.* at 296-297, 688. In analyzing this precedent, the United States Court of Appeals for the Third Circuit has held that the opinion by the *Vale* court addressed procedural and jurisdictional issues. *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 419 F.3d 216, 229 (3d Cir. 2005). Because the issues were regarded as procedural rather than substantive, the court held that the outcome-determinative test established in *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), does not require a district court to apply the Pennsylvania law. *Treesdale*, 419 F.3d at 229.

Rule 19 of the Federal Rules of Civil Procedure provides:

**(a)(1). Persons to be Joined if Feasible**. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if . . . (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest . . . .

Fed.R.Civ.P. 19(a)(1)(B)(i). In *Treesdale*, an insurance company filed a declaratory judgment action seeking a ruling that it was no longer responsible for indemnifying asbestos-related claims against one of its insured. *Treesdale*, 419 F.3d at 219. A group of original claimants sought to intervene in the

11

action in order to protect their right to receive compensation under the policy. *Id.* The court rejected the addition of the parties as necessary under Rule 19 because "a party is only 'necessary' if it has a legally protected interest, and not merely a financial interest, in the action." *Id.* at 230 (citations omitted).

In the instant case, the only intervention interest that Sefcik could hold is an assurance that she will be able to fully collect any damages that could be instituted from her legal malpractice suit. This interest results from the fact that an insurance company is more likely than a law partnership to have the funds necessary to compensate malpractice claims (although it is unlikely that the law partnership would be unable to pay) Under Pennsylvania law, she would be considered an indispensable party to the proceedings, but in this court, her status as a necessary party must be determined under Rule 19. *Treesdale*, 419 F.3d at 229. Under this analysis, Sefcik's intervention interest is directly analogous to that of the claimants in *Treesdale* because she holds only a financial interest in assuring that adequate funds will be available, not a legally protected interest. *Id.* at 230. Accordingly, Sefcik will not be added by the Court as an indispensable party.

## III. MOTION TO DISMISS

### A. STANDARD OF REVIEW

The standard of review for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) has been explained by the United States Supreme Court in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929, 940 (2007). In *Twombly*, the Court held that a plaintiff's pleading must provide grounds for relief and cannot simply rely on "labels and conclusions, and a formulaic recitation of the elements of a cause of action...." *Twombly*, 127 S. Ct. at 1965, 167 L. Ed. 2d at 940 (citation

12

omitted). Although it was held that a case cannot be dismissed due to a court's determination that the plaintiff will ultimately fail in the lawsuit, *Id.* at 1969, 945 n.8, the *Twombly* Court held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965, 940. (citations omitted). The Third Circuit has adopted this analysis for all types of cases, not just for anti-trust cases such as the one at stake in *Twombly*. *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

The Third Circuit has stated that, when deciding a motion to dismiss, a court should examine "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). The court went on to note that courts can also examine "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* (citations omitted).

Because of the Third Circuit standard, in deciding the motion to dismiss, this court is permitted to examine any document attached to the defendants' motion to dismiss as long as the plaintiffs' claims are based on the attachments. Accordingly, the copy of Sefcik's complaint, which was attached to the motion to dismiss by the defendants, can be examined by the court because that complaint is the basis for the instant case. Motion to Dismiss, Exhibit B, pp. 1-8. Furthermore, this court is permitted to examine the letter written by the plaintiffs to Sefcik because that letter is the basis for the plaintiffs' defense and reads as follows:

> This letter is to confirm our meeting wherein I explained the effect of our failure to toll the Statute of Limitations in your case. You understand our obligation in this matter and your right to contact other counsel. There remains a possibility of pursuing the

13

underinsured portion of your case, but we will await your decision in this matter.

*Id.* p. 10.

## B. ANALYSIS

The plaintiffs put forth two arguments as to why the defendants owe them indemnification or a defense. They first argue that they had no knowledge prior to signing the insurance policy that they would be sued by Sefcik. They also argue that the defendants were not prejudiced in any way by receiving delayed information regarding the lawsuit.

### 1. PRIOR PRECEDENT

Pennsylvania courts have long upheld language in insurance policies that excludes coverage when, before the inception of the insurance contract, an insured had prior knowledge of an otherwise recoverable circumstance. *Selko v. Home Ins. Co.*, 139 F.3d 146 (3d Cir. 1998); *Coregis Ins. Co. v. Wheeler*, 24 F. Supp. 2d 475 (E.D. Pa. 1998); *Mt. Airy Ins. Co. v. Thomas*, 954 F. Supp. 1073 (W.D. Pa. 1997). For example, in *Selko*, the court upheld language in a legal malpractice policy that permitted recovery as long as, prior to the policy period, "the insured had no basis to believe that the Insured had breached a professional duty." *Selko*, 139 F.3d at 149. The court then went on to develop a two-pronged test for determining what constitutes prior knowledge of a possible insurance claim. *Id.* at 152. In the first prong of the test, it must be shown that "the insured knew certain facts." *Id.* The second prong asks whether a reasonable attorney in the position of the insured "would have had a basis to believe [he or she] breached a professional duty. That the insured denies recognizing such a basis on grounds of ignorance of the law, oversight, psychological difficulties, or other personal reasons is immaterial." *Id.*

Following the precedent set down in *Selko*, the court in *Wheeler* held that any actions that fall short of a waiver of future claims against an attorney will not extinguish the prior knowledge exception. *Wheeler*, 24 F.Supp.2d 475, 480. In *Wheeler*, an attorney failed to file a slip and fall claim against a hospital within the Statute of Limitations period. *Id.* at 475- 476. Following the error, the attorney reduced his fee in an effort to compensate his client for the mistake and as a result, believed that the matter was settled and would not result in a lawsuit. *Id.* at 476. Shortly thereafter, the attorney entered into an malpractice insurance policy, which included a clause prohibiting recovery for any claim resulting from an act that occurred before the inception of the policy, as long as the insured knew or "could have reasonably foreseen" that the act could result in a future claim. *Id.* Subsequently, the attorney was sued by his former client and he informed the insurance company of the claim but coverage was denied. *Id.* The court held that even though the attorney lowered his fees in order to compensate for the error, there was still an "uncontroverted inference" that he did not have a release from the client that waived her right to a claim. *Wheeler*, 24 F.Supp.2d 475, 480. As a result, any reasonable attorney under the circumstances would have known that a lawsuit was possible, thus allowing the prior knowledge exception to apply. *Id.* at 479-480.

In addition to these precedents, this Court has previously made it clear that an attorney's subjective beliefs have no bearing on a prior knowledge exception. *Thomas*, 954 F. Supp. 1073, 1080. "Any dispute over whether the defendant believed, on the basis of his relationship with his client or his impression of that client's reaction to the situation, that the client would make a claim is not relevant to our analysis." *Id.*

Finally, as "the prior knowledge exclusion allows the insurer to more accurately assess risks and

15

calculate premiums for its insureds," it is potentially harmful for an insurer to be forced to show prejudice in order to apply the exclusion. *Ehrgood v. Coregis Ins. Co.*, 59 F.Supp.2d 438, 444-445 (M.D. Pa. 1998). Such a requirement could result in attorneys becoming wilfully blind to potential claims or purposefully failing to disclose a claim in the hopes that the insurer will be unable to show prejudice. *Id.*

### 2. APPLICATION

In the instant case, the policy signed by the plaintiffs contains an exclusions section that reads:

This insurance policy does not apply to "claims".

G. Arising out of any error, omission, negligent act or "personal injury" occurring prior to the inception date of this policy if any insured prior to the inception date knew or could have reasonably foreseen that such error, omission, negligent act or "personal injury" might be expected to be the basis of a "claim" or "suit".

Motion to Dismiss-Exhibit A2 p.14. In accordance with the policy, it is necessary to apply the *Selko* two-step analysis in order to determine whether or not the plaintiffs "knew or could have reasonably foreseen" that their failure to toll the statute of limitations could have resulted in a lawsuit.

In the plaintiffs' complaint, it was admitted that the members of the law firm knew of their failure to toll the statute of limitations, that they explained the error to Sefcik, and that her response indicated to them that she would not take legal action regarding the error. Motion to Dismiss-Exhibit A1, p.6. Furthermore, in a letter written to Sefcik by the plaintiffs, Pappas reminded Sefcik of their obligations in the matter as well as her right to contact other counsel. Motion to Dismiss-Exhibit B, p.10. Both of these documents make it clear that the plaintiffs were aware of the certain facts that gave rise to the claim. *Selko*, 139 F.3d at 152. Since they knew that the statute of limitations had not been

16

tolled, the first prong of the *Selko* analysis is met. *Id.* It is also apparent from the documents that, just as the reduced fees in *Wheeler* failed to constitute a waiver, the indication from Sefcik that she did not intend to pursue legal action cannot be considered a release that waived claims against them. *Wheeler*, 24 F.Supp.2d 475, 480. The plaintiffs' subjective belief that they would not be sued has no bearing on the analysis of whether or not they should have reasonably expected to be sued. *Thomas*, 954 F. Supp. 1073, 1080. Furthermore, given the mention of Sefcik's right to pursue other counsel, the letter to Sefcik indicates that plaintiffs believed that the matter was still open to legal action. Motion to Dismiss-Exhibit B, p.10. Accordingly, a reasonable attorney in the position of the plaintiffs would understand that a professional duty was breached, thus satisfying prong two of the *Selko* analysis. *Selko*, 139 F.3d at 152. "[A] reasonable person" also would have known that a lawsuit was possible because of the breach. *Wheeler*, 24 F.Supp.2d at 479.

Finally, despite the plaintiffs' insistence that Pennsylvania case law requires insurers to show prejudice in order for the prior knowledge exception to apply, this Court finds that such a showing is not required. *See Ehrgood,* 59 F. Supp. 2d at 444-445. As a result, this argument also fails to defeat the prior knowledge exception in the insurance policy. Accordingly, the plaintiffs have pled no facts that can give rise to "a right to relief", meaning that dismissal pursuant to Rule 12 (b)(6) is appropriate. *See Twombly*, 127 S.Ct. at 1965, 167 L. Ed. 2d at 940 .

An appropriate Order follows.

**AND NOW**, this 1st day of July, 2008, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the plaintiff's Motion to Remand (Document No. 4) is DENIED; IT IS FURTHER ORDERED THAT the defendant's Motion to Dismiss (Document No. 2) is GRANTED.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**